IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY (USA),<br><br>         **Plaintiff,**<br><br>  v.<br><br>WILLIAM ANDREWS, GLADYS ANDREWS, and JOHN DOES 1-10,<br><br>         **Defendants.** | **1:15-cv-3715-WSD** |

## OPINION AND ORDER

This matter is before the Court on Plaintiff John Hancock Life Insurance Company's ("Plaintiff") Renewed Motion for Preliminary Injunction [25] ("Renewed Motion").

## I.    BACKGROUND

On October 22, 2015, Plaintiff filed its Complaint [1] against Defendant William Andrews.  On November 6, 2015, Plaintiff filed its Amended Complaint [11] against Defendant William Andrews and Defendant Gladys Andrews (together, "Defendants").[1]

---

[1]    The Amended Complaint also names John Does 1-10 as defendants (the "John Doe Defendants").  The John Doe Defendants are unknown individuals or entities that received some of the Funds from Mr. Andrews or Mrs. Andrews. Plaintiff does not know the citizenship of the John Doe Defendants.  (Am. Compl.

Plaintiff asserts that, on February 12, 2001, Mr. Andrews entered an agreement (the "Agreement") with Settlement Capital Corporation ("Settlement Capital") to sell, assign, transfer, and convey to Settlement Capital his interest in eleven (11) annuity payments ("Annuity Payments") to which he was entitled in exchange for a lump sum payment of $250,000.  (Am. Compl. ¶¶ 7-8).  This payment was made to, and received by, Mr. Andrews.[2]

Plaintiff asserts that after the $250,000 payment was made, it "inadvertently sent [Mr.] Andrews a check ("Check") in the amount of $188,490.00, which [Mr. Andrews] had not earned and which he had no right to receive or retain" (the "Funds").  (Id. ¶ 11).[3]  Mr. Andrews negotiated the Check to Mrs. Andrews, who deposited it in an account she controlled.  (Id. ¶ 13).

---

¶ 4).  Fictitious party pleading is not permitted in federal court, unless Plaintiff describes the defendants with enough specificity to determine their identities.  See Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  Plaintiff fails to describe the John Doe Defendants in any detail, and where, as here, jurisdiction is based on diversity of citizenship, the use of fictitious defendants causes significant difficulty for federal courts performing the crucial task of determining their jurisdiction to hear the case.  See generally 13F Charles Alan Wright, et al., Federal Practice and Procedure § 3642 (3d ed. 2009) (discussing difficulties determining diversity jurisdiction when fictitious defendants are present).  The John Doe Defendants are required to be dismissed.

[2]     On February 20, 2001, JRH Capital Corporation, an affiliate of Plaintiff, purchased the Annuity Payments from Settlement Capital.  (Am. Compl. ¶ 10).

[3]     Plaintiff does not state how or why this mistake occurred.

Plaintiff discovered its mistake and, on August 27, 2015, called Mr. Andrews to demand the return of the Funds.  (Id. ¶¶ 14-16).  On September 1, 2015, and September 21, 2015, Plaintiff sent letters to Mr. Andrews demanding the return of the Funds.  (Id. ¶ 17).  Mr. Andrews did not comply with these demands.  (Id. ¶ 18).  Plaintiff also alleges that Mrs. Andrews transferred some or all of the Funds to John Does 1-10 in an attempt to hinder, defraud, or delay Plaintiff from recovering the Funds.  Plaintiff seeks the Court to require Defendants to return the Funds based on claims for (i) unjust enrichment; (ii) conversion; (iii) "Money had and received;" (iv) constructive trust; and (v) violations of the Uniform Transactions Act.  Plaintiff seeks injunctive relief to require the Funds to be maintained and not dissipated further, and also seeks attorneys' fees.

On October 22, 2015, Plaintiff filed its Motion for Temporary Restraining Order [2] ("TRO Motion"), requesting that the Court issue temporary injunctive relief restraining and enjoining Mr. Andrews from "spending, depleting or otherwise disposing of the [Funds]."  (TRO Mot. at 2).  On November 6, 2015, Plaintiff filed its Amended Motion for Temporary Restraining Order [14] ("Amended TRO Motion"), requesting that the Court issue temporary injunctive

relief against Mr. Andrews and Mrs. Andrews preventing them from spending or otherwise disposing of the Funds.  (Am. TRO Mot. at 5).

On November 9, 2015, the Court held a hearing on Plaintiff's TRO Motion and Amended TRO Motion.  At that hearing, the Court concluded that Plaintiff had not presented evidence sufficient to warrant the imposition of a temporary restraining order ("TRO").  The Court noted that the evidence showed that Mrs. Andrews had possession of the Funds but had only been named a defendant as of November 6, 2015, and had almost no notice of the TRO hearing.  The Court declined, under the circumstances, to issue a TRO, but suggested to Defendants' counsel that he advise his client and Mrs. Andrews to refrain from continuing to spend the Funds.  The Court ordered the parties to engage in expedited discovery, allowing Plaintiff to seek a preliminary injunction if the facts developed supported that it was entitled to injunctive relief.  (See November 10, 2015, Order by Docket Entry).

On December 3, 2015, Plaintiff filed its Renewed Motion for Preliminary Injunction.  On December 7, 2015, it filed its Supplemental Brief [27] ("Supplemental Brief") in Support of its Renewed Motion.  Plaintiff attached to these pleadings bank statements from Wells Fargo that detail Mrs. Andrews' withdrawal and use of the Funds.  These statements show that Mrs. Andrews

expended Funds for personal expenses, including after she was advised of the November 9, 2015, TRO hearing and after counsel communicated the Court's admonishment that the Funds not be accessed.

On December 7, 2015, the Court conducted a telephone conference on the Renewed Motion and Supplemental Brief.  During the conference, Defendants' counsel, Mr. Willie J. Huntley, III, confirmed that he told Mrs. Andrews that the Court would "frown upon" her spending the Funds.

## II.   DISCUSSION

### A.   Legal Standard

To be eligible for a temporary restraining order or preliminary injunctive relief under Rule 65, a movant must establish each of the following elements: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); Parker v. State Bd. of Pardons and Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001).  Preliminary injunctive relief is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements.  Four Seasons Hotels and

Resorts v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003).  Temporary

restraining orders are "designed to preserve the status quo until there is an

opportunity to hold a hearing on the application for a preliminary injunction."

11A Wright & Miller, Federal Practice & Procedure: Civ.2d § 2951.

 Rule 65(b)(2) provides that a TRO expires 14 days after it is issued, unless

the Court sets an earlier date.  Fed. R. Civ. P. 65(b)(2); Connell v. Dulien Steel

Products, Inc., 240 F.2d 414, 417 (5th Cir. 1957); see also Pan Am. World

Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO, 306 F.2d

840, 842 (2d Cir. 1962).

 B. Analysis

  1. Likelihood of Success on the Merits

 Mr. Andrews admits that he signed the Agreement.  (See [25.2] at 23 and

[25.3] at 2).  Plaintiff alleges it sent the Check to Mr. Andrews by mistake, and

that, upon learning of this mistake, Plaintiff repeatedly sought the return of the

Check and the Funds it represents.  (See Am. Compl. at ¶¶ 14-17).  Mr. Andrews

claims that someone employed by Plaintiff advised him that he was entitled to

deposit the Check and he thus concludes he is entitled to the Funds.  ([25.3] at 2).

Defendants do not offer any evidence to corroborate that this communication was

made or that Defendants are otherwise entitled to keep and use the Funds.  At this

stage in the proceedings, based on the evidence submitted, the Court concludes that Plaintiff has a substantial likelihood of success on the merits on its claim that neither Mr. Andrews nor Mrs. Andrews are entitled to the Funds and that Defendants are obligated to return them.

### 2.   Irreparable Injury

The evidence supports that Mrs. Andrews will continue to dissipate the Funds.  On August 4, 2015, Mrs. Andrews opened a Platinum Savings Account at Wells Fargo (the "Platinum Account")[4] and deposited the Check into it.  (Renewed Mot., Ex. D [25.5] at 17).  Between August 4, 2015, and November 30, 2015, Mrs. Andrews withdrew $66,100 in cash directly from the Platinum Account.  (Ex. D. at 17, 40; Supp. Br., Ex. A [27.1] at 11).[5]  Whether these funds are still in Mrs. Andrews' possession or control is unknown.

Between August 4, 2015, and November 30, 2015, Mrs. Andrews transferred over $72,000 from the Platinum Account to her Wells Fargo checking account (the "Checking Account").[6]  Importantly, Mrs. Andrews transferred Funds after she was told of the November 9, 2015, TRO hearing and after her counsel told her that the Court admonished her to maintain, and not expend, the Funds while this matter

---

[4]      Wells Fargo Account ending in 1876.

[5]      All of these withdrawals occurred before the Amended Complaint was filed and before the Court's November 9, 2015, hearing.

[6]      Wells Fargo Essential Checking Account ending in 4770.

is pending.  The record shows that Mrs. Andrews transferred $17,124.86 on or after November 9, 2015.  (Ex. A. at 11).  Between August and November, 2015, Mrs. Andrews withdrew over $25,000 in cash from the Checking Account, including $9,350 that was withdrawn on or after November 9, 2015.  (Ex. D at 13-16, 25-26, 36-39; Ex. A at 7-10).

Mrs. Andrews has used Funds in the Checking Account on purchases made both before, and after, the November 9, 2015, hearing.  For example, after November 9, 2015, Mrs. Andrews spent $3,641.40 on a single transaction at Wal-Mart, spent over $1,500 at Dillards, and spent over $2,000 in unspecified transactions involving the Atlanta Falcons, Mr. Andrews' former employer.  (Ex. A. at 8-9).

On November 30, 2015, the Platinum Account had a balance of $50,005.17, and the Checking Account had a balance of $3,064.76.  (Ex. A. at 10-11).

The Court concludes that, in the absence of a TRO, Mrs. Andrews will continue to dissipate the Funds.  Over $138,000 of the Funds were withdrawn or transferred from the Platinum Account.  Mrs. Andrews continued to transfer funds from the Platinum Account even after she was named a defendant in this action and after being told by her counsel that the Court stated she should not expend the Funds.  Her use of Funds in excess of $138,000 in less than four months, and the

Defendants' claimed lack of other funds to satisfy a judgment,[7] confirms that, in the absence of injunctive relief, Plaintiff will suffer irreparable harm because the Funds will be unavailable to satisfy a judgment.  In fact, based on Defendants' claim of financial distress, it appears unlikely they will be able to pay the Funds already expended if ordered to return the amount of the Funds at issue.

　　　　　3.　　Threatened Injury Outweighs Harm

There is no evidence that Defendants will suffer any harm if they are temporarily restrained from spending or otherwise dissipating the Funds.  The threatened injury to Plaintiff of being unable to recover the lost Funds is substantial.

　　　　　4.　　Public Interest

There is no evidence that the entry of a TRO would serve, or harm, the public interest.  This factor is neutral towards the imposition of a TRO against Defendants.  See Schiavo, 403 F.3d at 1225-26.

In evaluating the four TRO factors, the Court concludes that Plaintiff is likely to succeed on the merits of its claims, will suffer irreparable harm in the absence of a TRO, and that this harm outweighs any potential harm to Defendants. Plaintiff, thus, is entitled to a TRO enjoining Defendants from accessing or

---

[7]　　Defendants, as their Ninth Affirmative Defense, assert that they have no assets to satisfy a judgment.  (Answer [24] at 5).

expending the Funds, and requiring Defendants to deposit the Funds into the Registry of the Court.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant William Andrews and Defendant Gladys Andrews are hereby **ENJOINED** from accessing, spending, transferring, withdrawing, or otherwise dissipating the Funds, including those in the Platinum Account, the Checking Account, any other bank account, or which are maintained in any other location.

**IT IS FURTHER ORDERED** that Defendants are directed, on or before 5:00 p.m. on December 9, 2015, to deposit into the Registry of the Court all of the Funds, including, but not limited to, those in the Platinum Account, the Checking Account, any other bank account, or which are maintained in any other location.

**IT IS FURTHER ORDERED** that a hearing on Plaintiff's Renewed Motion for Preliminary Injunction [2] will be held on Tuesday, December 22, 2015, at 10:00 a.m. in Courtroom 1705 of the Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, Georgia, 30303, or at a later date if the parties consent to a later hearing.  If a later hearing is not agreed to by the parties, Defendants shall, on or

before December 15, 2015, file their response to the Renewed Motion.  Plaintiff may file a reply on or before December 17, 2015.

**IT IS FURTHER ORDERED** that Defendants John Doe 1-10 are **DISMISSED** from this case.

**SO ORDERED** this 8th day of December, 2015.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE