IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN HANCOCK LIFE
INSURANCE COMPANY (USA),

        Plaintiff,

v.

WILLIAM ANDREWS and
GLADYS ANDREWS,

        Defendants.

1:15-cv-3715-WSD

**OPINION AND ORDER**

This matter is before the Court on Plaintiff John Hancock Life Insurance Company's ("Plaintiff") Renewed Motion for Preliminary Injunction [25] ("Renewed Motion").

**I.    BACKGROUND**

On August 1, 1984, Mr. Andrews entered into an annuity contract (the "Annuity Contract") with Manufacturers Life Insurance Company ("ManuLife"). (11.1] at 1). Under the Annuity Contract, ManuLife agreed to pay Mr. Andrews $200,000 a year for thirty (30) years, beginning on August 1, 1996, and ending on August 1, 2025. (Id.).

In February 2001, Settlement Capital Corporation ("Settlement Capital") and Mr. Andrews executed a Receivable Purchase and Sale Agreement [11.1] (the "Agreement"), in which Mr. Andrews agreed to sell his interest in eleven (11) Annuity Contract payments ("Annuity Payments"), in exchange for a lump sum payment of $250,000.[1]  (Id. at 1-2, 8).  The Agreement covers the eleven Annuity Payments from August 1, 2015 through August 1, 2025.  (Id. at 1).  The $250,000 lump sum payment is the only payment required to be paid to Mr. Andrews under the Agreement.  (Id. at 2).

The Agreement also provides that it supersedes any prior agreements between the parties, and it can be amended or modified only in writing signed by all of the parties.  (Id. at 6).

On August 1, 2015, the date the first Annuity Payment was required to be paid to Settlement Capital pursuant to the Agreement, Plaintiff John Hancock Life Insurance Company ("Plaintiff") sent to Mr. Andrews a check (the "Check") in the amount of $188,490.00 (the "Funds").  (Am. Compl. [11] ¶ 11; Ex. B. [11.2] at

---

[1] In a prior agreement with Mr. Andrews that is not at issue in this case, Settlement Capital purchased fourteen (14) other of Mr. Andrews' Annuity Contract payments, payable during the period August 1, 2001 through August 1, 2014.  (Agreement at 2).

1]).[2]  This Check was intended to be made out to Settlement Capital, and not Mr. Andrews.[3]  ([11.3] at 1-4]).

On August 27, 2015, Plaintiff called Mr. Andrews to tell him of the payment mistake and to demand the return of the Check.  (Am. Compl. ¶¶ 14-15; Ex. C. [11.3] at 3).  On September 1, 2015, and September 21, 2015, Plaintiff sent letters to Mr. Andrews reiterating the payment mistake and to demand that the Funds be returned.  (Am. Compl. Ex. C. at 1-4).  In these letters, Plaintiff advised Mr. Andrews that he had relinquished his right to the Annuity Payments under the Agreement, and that the Check was meant to be payable to Settlement Capital, and not to him.  (Id.).

Mr. Andrews did not return the Funds and, on October 22, 2015, Plaintiff filed this action.  On November 6, 2015, Plaintiff filed its Amended Complaint [11], adding Mrs. Andrews (together with Mr. Andrews, the "Defendants") as a defendant, and alleging that Mr. Andrews endorsed the Check as payable to Mrs. Andrews.

---

[2]     This represents the $200,000 Annuity Payment required to be paid on August 1, 2015, minus withheld taxes.  (Tr. of December 22, 2015, hearing, at 13:9-12).

[3]     Plaintiff does not explain exactly why it, and not ManuLife, is obligated to pay the Annuity Payments.

On December 3, 2015, Plaintiff filed its Renewed Motion for Preliminary Injunction. On December 7, 2015, the Court conducted a telephone hearing on the Renewed Motion, and, on December 8, 2015, the Court entered a temporary restraining order ("TRO") enjoining Defendants from accessing, spending, transferring, withdrawing, or otherwise dissipating the Funds, and requiring them to deposit the Funds in the Registry of the Court. (December 8, 2015, Order [30] at 10). On December 15, 2015, Defendants filed their Response [35] to the Renewed Motion.

On December 22, 2015, the Court held a hearing on the Renewed Motion. Plaintiff argued that Plaintiff met the criteria for entry of the injunction requested. Defendants did not submit any evidence to contradict the evidence presented to the Court before the hearing. Defendants argued only that Plaintiff did not meet its burden to show that it has a substantial likelihood of success on the merits of its claims.

**II.   DISCUSSION**

   A.   <u>Legal Standard</u>

To be eligible for preliminary injunctive relief under Rule 65, a movant must establish each of the following elements: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted;

(3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); Parker v. State Bd. of Pardons and Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001). Preliminary injunctive relief is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements. Four Seasons Hotels and Resorts v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003).

B. Analysis[4]

Defendants argue Plaintiff did not meet the "substantial likelihood of success on the merits" prong of the Rule 65 analysis, arguing: (1) Plaintiff did not meet its burden of proof to show that the Check was issued to Mr. Andrews by mistake; (2) there may have been a miscalculation by Settlement Capital of the amount owed to Mr. Andrews under the Agreement, and the Check may have been meant to remedy this unspecified miscalculation; (3) an employee or agent of Plaintiff advised Mr. Andrews that he was entitled to the Check; and (4) there is no

---

[4] The Court, in its December 8, 2015, Order, discussed the evidence presented by Plaintiff and concluded that: (i) Plaintiff was likely to succeed on the merits of its claims; (ii) would suffer irreparable harm in the absence of a TRO; and (iii) the harm Plaintiff would suffer outweighed any potential harm Defendants would suffer. (December 8, 2015, Order, at 6-9). Defendants did not, at the December 22, 2015, hearing, submit any additional evidence for the Court to consider.

evidence that Mrs. Andrews knew of the Agreement between Mr. Andrews and Settlement Capital, or that Mrs. Andrews knew about the correspondence Plaintiff sent to Mr. Andrews explaining the mistake in sending the Check.

The Agreement executed by Settlement Capital and Mr. Andrews is, on its face, unequivocal regarding the terms of the Agreement. The Agreement states that Mr. Andrews relinquished any right to the Annuity Payments from August 1, 2015 through August 1, 2025, in return for a payment of $250,000, which his lawyers concede he received. There is also no evidence that the Agreement was modified in writing, or that there was any reason that Plaintiff was obligated to send any amount of money to Mr. Andrews on August 1, 2015. Defendants speculate that it is possible someone employed by Plaintiff concluded that Mr. Andrews was entitled to an additional Annuity Payment. Defendants, however, concede they have no factual support for this contention, and they also concede that the plain language of the Agreement does not support that Mr. Andrews was entitled to an additional Annuity Payment or any other amount of money.

Defendants' counsel agreed at the December 22, 2015, hearing, that the terms of the Agreement are unambiguous. They provide that Mr. Andrews relinquished his right to Annuity Payments from August 1, 2015 through

August 1, 2025 in exchange for a single payment of $250,000.  Where there is no ambiguity, a contract is enforced "according to its plain terms, and the contract alone is looked to for meaning."  E.g., Winterboer v. Floyd Healthcare Mgmt., Inc., 778 S.E.2d 354, 358 (Ga. Ct. App. 2015).  It is incredulous that Mr. Andrews believed that he was entitled to an additional Annuity Payment based on some claimed miscalculation that entitled Mr. Andrews to retain an additional payment under the Agreement.

Defendants' argument that they are entitled to the Check because an unknown employ or agent of Plaintiff advised Mr. Andrews that he was entitled to the Check, also is without merit.  A person is entitled to recover monies paid to another by mistake.  See, e.g., Leasing Serv. Corp. v. Hobbs Equip. Co., 894 F.2d 1287, 1291 (11th Cir. 1990).  "One who receives money from another through a mistake of fact is not relieved of restitution liability simply because the other could have discovered the true facts through the exercise of greater diligence."  Id. at 1291-92.  The evidence presented by Plaintiff shows that Plaintiff mistakenly sent the Check to Mr. Andrews.  Assuming, *arguendo*, there was a conversation in which some unidentified employee of Plaintiff said Mr. Andrews was entitled to the Check, there is no authority to support that when an agent or employee of the payor mistakenly tells the payee that he is entitled to funds sent in error, that the

payee is entitled to keep the funds, especially after the mistake is identified by the payor and the payee is advised of it.  The Agreement unambiguously states that Mr. Andrews was entitled only to the $250,000 payment he received in 2001.  The subsequent payment by Plaintiff in 2015, under the terms of the Agreement, was a mistake, and Plaintiff has a substantial likelihood of success on the merits, supporting entry of injunctive relief.

Defendants next contend that even if an injunction is appropriate, it should not apply to Mrs. Andrews, who did not know of the Agreement or the fact that the Check was mistakenly sent to Mr. Andrews.  Mrs. Andrews, at a minimum, knew of Plaintiff's allegations when she was added to this action on November 6, 2015.  Plaintiff has alleged, and Defendants have not argued otherwise, that Mrs. Andrews was, without any consideration, given the Check by Mr. Andrews, and that she spent the Funds even after she was named as a defendant.  Under Georgia law, a creditor who asserts a claim under the Uniform Voidable Transfers Act, as Plaintiff does, to obtain "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property." O.C.G.A. § 18-2-77.  Mrs. Andrews is a transferee of the Funds at issue in this case, and an injunction against her to prevent further dissipation of the Funds is warranted.

The evidence shows that Plaintiff has a substantial likelihood of success on its claim.  See Leasing Serv. Corp., 894 F.2d at 1291-92.  The evidence also supports that Plaintiff will suffer irreparable harm in the absence of injunctive relief.  The Renewed Motion included bank statements from Wells Fargo detailing Mrs. Andrews' withdrawal and use of the Funds.  These statements show that Mrs. Andrews expended Funds for personal expenses, including after she was advised of the November 9, 2015, TRO hearing and after counsel communicated the Court's admonishment that the Funds not be accessed.  Mrs. Andrews withdrew or transferred $138,000 of the Funds in less than four months.[5]  In the absence of injunctive relief, the Court concludes that Mrs. Andrews will continue to dissipate the Funds, entitling Plaintiff to the injunctive relief requested.[6]

Finally, there is no evidence that Defendants will suffer any harm if they are restrained from spending or otherwise dissipating the Funds.  The threatened injury

---

[5] The "Analysis" section of the Court's December 8, 2015, Order, contains a detailed discussion of Mrs. Andrews expenditure of the Funds. (December 8, 2015, Order, at 7-9).  Defendants' counsel, at the December 22, 2015, stated that Mrs. Andrews no longer has any of the Funds that she withdrew.

[6] Based on Defendants' claim of financial distress, it appears unlikely they have the capacity to repay the Funds already expended.

9

to Plaintiff of being unable to recover the lost Funds is substantial.[7]

The Court concludes that Plaintiff is likely to succeed on the merits of its claims, will suffer irreparable harm in the absence of a preliminary injunction, and this harm outweighs any potential harm to Defendants. Plaintiff, thus, is entitled to a preliminary injunction enjoining Defendants, and any others acting in concert with them, from accessing or expending the Funds, or any property purchased with the Funds.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Renewed Motion for Preliminary Injunction [25] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant William Andrews, Defendant Gladys Andrews, and all others acting in concert with them or who otherwise are aware of this Order, are hereby **ENJOINED** from accessing, spending, transferring, encumbering, withdrawing, or otherwise dissipating the Funds, or any property purchased with the Funds, including the Funds in the Platinum Account,

---

[7] There is no evidence that the entry of a preliminary injunction would serve, or harm, the public interest. This factor is neutral towards the imposition of a preliminary injunction against Defendants. See Schiavo, 403 F.3d at 1225-26.

the Checking Account, any other bank account, or which are maintained in any other location.

**SO ORDERED** this 22nd day of December, 2015.

*/s/ William S. Duffey*
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE