IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN HANCOCK LIFE
INSURANCE COMPANY (USA),

  **Plaintiff,**

  v.                                        1:15-cv-3715-WSD

WILLIAM ANDREWS and
GLADYS ANDREWS,

  **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff John Hancock Life Insurance

Company (USA)'s ("Plaintiff") Motion for Summary Judgment [53].

I.   BACKGROUND

   A.   Facts

   On August 1, 1984, Plaintiff issued an annuity ("Annuity") to Defendant

William Andrews ("Mr. Andrews").  (Plaintiff's Statement of Material Facts [53.2]

("PSMF") ¶ 3; [11.1] at 1).[1]  The Annuity required Plaintiff to pay Mr. Andrews

$200,000 a year for thirty years, beginning on August 1, 1996, and ending on

---

[1]    Although Manufacturers Life Insurance Company technically issued the
Annuity, that entity is now known as John Hancock Life Insurance Company
(USA).  (PSMF ¶ 3).

August 1, 2025.  ([11.1] at 1).  On October 5, 1999, Mr. Andrews sold to

Settlement Capital Corporation ("Settlement Capital") his right to receive future

payments under the Annuity for the thirteen-year period of August 2001 through

August 2014 (the "Initial Annuity Payment Agreement").  (PSMF ¶¶ 1, 8).[2]

On February 12, 2001, Mr. Andrews entered into a second agreement with

Settlement Capital to sell his remaining future payments under the Annuity

(the "Second Annuity Payment Agreement" or "SAPA").  (PSMF ¶¶ 2, 6).  Under

the SAPA, Mr. Andrews sold to Settlement Capital his Annuity payments for the

period of August 2015 through August 2025 (the "Annuity Payments"), in return

---

[2]     Defendants William Andrews and Gladys Andrews (together, "Defendants")
fail to cite or submit any evidence in support of their opposition to Plaintiff's
Motion for Summary Judgment.  The Court adopts the facts in Plaintiff's
Statement of Material Facts [53.2] to which, in violation of Local Rule 56.1,
Defendants did not specifically respond.  See Hampton v. Atzert, 590 F. App'x
942, 944 (11th Cir. 2014) ("[A] district court will accept each of the movant's facts
admitted at summary judgment unless the nonmovant directly refutes these facts
with concise responses."); Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008)
(stating that compliance with Local Rule 56.1 is the "only permissible way . . . to
establish a genuine issue of material fact" in response to the moving party's
assertion of undisputed facts).  The Court disregards the unsupported factual
assertions made in Defendants' response brief.  See Ellis v. England, 432 F.3d
1321, 1326 (11th Cir. 2005) ("[M]ere conclusions and unsupported factual
allegations are legally insufficient to defeat a summary judgment motion.");
cf. Reese, 527 F.3d at 1268 ("The proper course in applying Local Rule 56.1 at the
summary judgment stage is for a district court to disregard or ignore evidence
relied on by the respondent—but not cited in its response to the movant's statement
of undisputed facts—that yields facts contrary to those listed in the movant's
statement.").

for an immediate lump sum of $250,000.  (PSMF ¶¶ 2-4).  The SAPA explains the

consequences of the transaction to Mr. Andrews:

> [Mr. Andrews] shall not have any further interest in or rights to the
> Annuity, the Assigned Receivable Payments or any other payments
> due in connection with the Annuity. . . .  [Mr. Andrews] does hereby
> absolutely sell, assign, transfer, set over and convey to Purchaser, free
> and clear of any liens or encumbrances, all of [Mr. Andrews'] right,
> title, and interest in, to, and under the Assigned Receivable
> Payments. . . .  This Agreement and the Transaction Documents may
> be amended, modified, superseded or canceled, or any of the terms,
> provisions, representations, warranties, covenants or conditions hereof
> or thereof may be waived only by written instrument signed by all
> parties hereto.

(PSMF ¶ 8).  Mr. Andrews received the immediate lump sum payment of $250,000

required to be paid by Settlement Capital.  (PSMF ¶ 5).

On February 20, 2001, JRH Capital Corporation ("JRH") purchased from

Settlement Capital the right to receive the Annuity Payments.  (PSMF ¶ 10).[3]  The

agreement by which JRH purchased the Annuity Payments listed JRH's address as

"John Hancock Life Insurance Company, 200 Clarendon Street, Boston, MA

02117, Attn: Bond & Corporate Finance."  (PSMF ¶ 12).

Consistent with the Initial Annuity Payment Agreement, Mr. Andrews did

not receive any Annuity payments from 2001 through 2014.  (PSMF ¶ 26).  In

January 2015, about six months before the first Annuity Payment was required to

---

[3]      JRH is an affiliate of Plaintiff.  (PSMF ¶ 10).

be made to JRH, Plaintiff mistakenly mailed an annual statement of Annuity payments to "William Andrews, Attn: Bond & Corporate Finance, Clarendon Street, Boston, MA."  (PSMF ¶ 11).  The annual statement was returned as undeliverable.  (PSMF ¶ 13).  Plaintiff's Returned Mail Team ran a LEXIS Accurint report to identify Mr. Andrews' current address.  (PSMF ¶ 14).[4]  LEXIS Accurint returned a Georgia address for Mr. Andrews.  (PSMF ¶ 15).

In early June 2015, the Returned Mail Team sent an address confirmation letter to Mr. Andrews at the Georgia address provided by LEXIS Accurint.  (PSMF ¶15).  On June 15, 2015, Mr. Andrews called Plaintiff's customer service department to discuss the letter.  (PSMF ¶ 16).  Mr. Andrews told the customer service representative to send the Annuity Payments to the address they had for him in Georgia.  (PSMF ¶ 18).  The representative updated Plaintiff's system to reflect Mr. Andrews' Georgia address.  (PSMF ¶¶ 17-18).  Plaintiff sent Mr. Andrews a letter confirming the change in address to which the Annuity Payments would be sent.  (PSMF ¶ 20).  There is no evidence that Mr. Andrews told the representative he previously sold, and thus no longer had a right to receive, the Annuity Payments.  (PSMF ¶ 19).

---

[4]     The team mistakenly believed they had the wrong address for Mr. Andrews on file, rather than the wrong name of the person to whom Annuity Payments were owed.

On August 1, 2015, Plaintiff mailed Mr. Andrews a check for $188,490 (the "Funds").  (PSMF ¶ 21).[5]  Mr. Andrews immediately endorsed the check to his wife, Defendant Gladys Andrews ("Mrs. Andrews").  (PSMF ¶¶ 23-24).  He did not receive consideration for this payment to Mrs. Andrews.  (PSMF ¶ 24).  At the time of the transfer, Mr. Andrews owned no assets "other than [his] clothing."  (PSMF ¶ 25).

On August 4, 2015, Mrs. Andrews opened a Platinum Savings Account at Wells Fargo Bank (the "Platinum Account") into which she immediately deposited the Funds.  (PSMF ¶ 27).  From August 12, 2015, through August 27, 2015, Mrs. Andrews withdrew $4,100 in cash and transferred $22,240 to her checking account (the "Checking Account").  (PSMF ¶ 29; [25.5] at 17).

On August 27, 2015, Plaintiff called Mr. Andrews, told him the Funds were sent to him in error, and asked him to return the Funds immediately.  (PSMF ¶¶ 30, 32).  Mr. Andrews said he intended to review the terms of the SAPA before returning the Funds.  (PSMF ¶ 32).  On August 31, 2015, Mrs. Andrews transferred another $2,150 from her Platinum Account to her Checking Account.  (PSMF ¶ 29; [25.5] at 17).

---

[5]     This appears to represent the $200,000 Annuity payment required to be paid on August 1, 2015, from which taxes had been withheld.  ([42] at 3 n.2).

On September 1, 2015, Plaintiff sent Mr. Andrews a letter explaining the error and requesting "full reimbursement" of the Funds within thirty days. (PSMF ¶ 33; [11.3]). The letter stated that, unless the Funds were returned by the end of 2015, Plaintiff was "required to report the overpayment to the Internal Revenue Service (IRS) as a distribution in [Mr. Andrews'] name." ([11.3] at 3). Two days later, on September 3, 2015, Mrs. Andrews transferred $5,000 from her Platinum Account to her Checking Account. ([25.5] at 27).

On September 16, 2015, Plaintiff called Mr. Andrews and left him a voicemail. ([11.3] at 4). Mr. Andrews did not return the call. ([11.3] at 4). On September 21, 2015, Plaintiff sent Mr. Andrews another letter, attaching a copy of the SAPA and demanding repayment of the Funds. (PSMF ¶ 33; [11.3]). The letter stated that Plaintiff would initiate legal proceedings if Mr. Andrews did not return the Funds by October 1, 2015. ([11.3] at 5). On September 22, 2015, Plaintiff's counsel called Mr. Andrews and again demanded payment. (PSMF ¶ 36). Mr. Andrews said he had spoken to counsel about Plaintiff's request. (PSMF ¶ 36). He did not agree to return the Funds. Two days later, Mrs. Andrews

transferred another $5,000 from her Platinum Account to her Checking Account. ([25.5] at 27).[6]

   In October 2015, Mrs. Andrews made five cash withdrawals, totaling $44,000, from her Platinum Account.  (PSMF ¶ 38).  The same month, she transferred $21,000 from her Platinum Account to her Checking Account.  ([25.5] at 40).  From August 12, 2015, through October 22, 2015, she withdrew from her Platinum Account, or transferred to her Checking Account, a total of $103,490. (PSMF ¶ 39).[7]

   B.   Procedural History

   On October 22, 2015, Plaintiff filed its Verified Complaint on Claim for Debt [1] ("Complaint") naming Mr. Andrews as a defendant.  The Complaint sought repayment of the Funds plus interest, and litigation expenses under

---

[6]   Mrs. Andrews claims that, before September 19, 2015, she did not know that "John Hancock was seeking return of the Funds, that John Hancock had contacted her husband about returning the Funds, and that [] John Hancock claimed the Check was sent by mistake."  (PSMF ¶ 35).

[7]   From August 12, 2015, through October 22, 2015, Mrs. Andrews transferred $55,390 from her Platinum Account to her Checking Account.  During this period, less than $15,000 was deposited into her Checking Account from sources other than her Platinum Account.  Over the same period, Mrs. Andrews withdrew or spent almost $70,000 from her Checking Account, including $12,000 in ATM withdrawals, $13,000 in purchases from Wal-Mart and Apple, $15,000 in transfers, and $5,000 in purchases at Rooms to Go and Haverty's.  (PSMF ¶¶ 40-41).  No money, other than the Funds, was deposited into Mrs. Andrews' Platinum Account from the date it was opened through November 30, 2015.  (PSMF ¶ 28).

O.C.G.A. § 13-6-11.  On October 22, 2015, Plaintiff also filed its Motion for

Temporary Restraining Order and Request for a Preliminary Injunction [2],

seeking a temporary restraining order ("TRO") "restraining and enjoining

[Mr. Andrews] from spending, depleting, or otherwise disposing of the funds he

has received by mistake."  ([2.1] at 1-2).

On November 4, 2015, Mrs. Andrews made a cash withdrawal of $18,000

from her Platinum Account.  (PSMF ¶ 43).  On November 6, 2015, Plaintiff filed

its Amended Complaint on Claim for Debt and Injunctive Relief [11]

("Amended Complaint"), adding Mrs. Andrews as a defendant[8] and asserting

claims for unjust enrichment (Count 1), conversion (Count 2), money had and

received (Count 3), imposition of a constructive trust (Count 4), relief under

Georgia's Uniform Voidable Transactions Act ("UVTA"), O.C.G.A. § 18-2-70

*et seq.* (Count 5), injunctive relief (Count 6), and attorney's fees under O.C.G.A.

§ 13-6-11 (Count 7).  On November 6, 2015, Plaintiff amended its TRO motion to

---

[8]      The Amended Complaint also added John Does 1-10 as defendants.
On December 8, 2015, the Court dismissed these fictitious defendants because
"Plaintiff fails to describe [them] in any detail."  ([30] at 2 n.1); see
Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (stating that fictitious
party pleading is not permitted in federal court unless "the plaintiff's description of
the defendant is so specific as to be at the very worst, surplusage").

reflect the changes in its Amended Complaint, including the addition of

Mrs. Andrews as a named defendant.  ([14]).

On November 9, 2015, the Court held a hearing on Plaintiff's request for a

TRO.  ([15]).  The Court declined to issue a TRO because Plaintiff did not present

sufficient evidence in support of its requested relief.  The Court suggested that

Defendants' counsel advise Defendants to refrain from spending the Funds.  The

Court ordered the parties to engage in expedited discovery so that Plaintiff could

promptly determine if there was evidence warranting a motion for preliminary

injunctive relief.  (See November 10, 2015, Order by Docket Entry; [30] at 4).

From November 9, 2015, through November 20, 2015, Mrs. Andrews

transferred $17,000 from her Platinum Account to her Checking Account.  (PSMF

¶ 45; [27.1]).  In November 2015, she withdrew approximately $13,400 from her

Checking Account and spent approximately $3,600 in a single Wal-Mart

transaction, $1,200 in a Lowe's transaction, $2,000 on the Atlanta Falcons, and

$1,500 at department stores such as Dillard's and Von Mauer.  (PSMF ¶ 46).[9]

---

[9]   Plaintiff asked Mrs. Andrews, during discovery, how she spent the Funds
and what she purchased with them.  Mrs. Andrews responded, "I do not recall,"
and claimed she did not retain any documents responsive to the question.  (PSMF
¶¶ 52-53).

On December 2, 2015, Defendants filed counterclaims against Plaintiff for negligent misrepresentation (Count 1), breach of the duty of good faith and fair dealing (Count 2), and promissory estoppel (Count 3).  ([24] at 6-8).  Defendants claim that "Plaintiff negligently supplied [Mr. Andrews] with false information that he was entitled to receive [the Funds]," and that Mr. Andrews "reasonably relied on this representation and endorsed the proceeds to his wife."  ([24] at 7).  Defendants ask the Court to enter judgment in their favor, against Plaintiff, in the amount of $188,490 plus interest.  ([24] at 8).

On December 3, 2015, Plaintiff filed its Renewed Motion for a Preliminary Injunction [25].  On December 7, 2015, the Court conducted a telephone conference with the parties.  ([27]).  During the conference, Defendants' counsel confirmed that he told Mrs. Andrews the Court would "frown upon" her continued expenditure of the Funds.  ([30] at 5).  The next day, the Court issued a TRO enjoining Defendants "from accessing, spending, transferring, withdrawing, or otherwise dissipating the Funds."  ([30] at 10).  The Court also ordered Defendants to deposit any remaining Funds into the Registry of the Court.  ([30] at 10).  On December 9, 2015, Defendants deposited $50,005.17 into the Court Registry.  (See December 10, 2015, Docket Entry; PSMF ¶ 49).

On December 22, 2015, the Court held a hearing on Plaintiff's Renewed Motion for a Preliminary Injunction.  ([43]).  The next day, the Court granted the motion and enjoined Defendants from "accessing, spending, transferring, encumbering, withdrawing, or otherwise dissipating the Funds, or any property purchased with the Funds."  ([42] at 10).  The Court found that, under the SAPA, Mr. Andrews "unequivocal[ly] . . . relinquished any right to the Annuity Payments."  ([42] at 6).  The Court stated "[i]t is incredulous that Mr. Andrews believed that he was entitled to an additional Annuity Payment based on some claimed miscalculation that entitled Mr. Andrews to retain an additional payment under the Agreement."  ([42] at 7).

On April 28, 2016, Plaintiff filed its Motion for Summary Judgment, seeking summary judgment on its claims for money had and received, conversion, and violations of the UVTA.  Plaintiff also seeks summary judgment on Defendants' counterclaims for negligent misrepresentation, promissory estoppel, and breach of the duty of good faith and fair dealing.  Plaintiff asks the Court to enter judgment against Defendants in the amount of $188,490, plus prejudgment interest.

## II.    LEGAL STANDARD

"Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Ahmed v. Air France-KLM, 165 F. Supp. 3d 1302, 1309 (N.D. Ga. 2016); see Fed. R. Civ. P. 56.  "An issue of fact is material if it 'might affect the outcome of the suit under the governing law.'"  W. Grp. Nurseries, Inc. v. Ergas, 167 F.3d 1354, 1360 (11th Cir. 1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Id. at 1361 (quoting Anderson, 477 U.S. at 248).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying [materials] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The movant[] can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof."  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999).

The moving party need not "support its motion with affidavits or other similar materials *negating* the opponent's claim." Celotex, 477 U.S. at 323. Once the moving party has met its initial burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham, 193 F.3d at 1282. The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

"If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted." Apcoa, Inc. v. Fid. Nat. Bank, 906 F.2d 610, 611 (11th Cir. 1990) (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 250). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith

<u>Radio Corp.</u>, 475 U.S. 574, 586-87 (1986)); <u>cf.</u> <u>Miller v. Kenworth of Dothan, Inc.</u>,

277 F.3d 1269, 1275 (11th Cir. 2002) (a party is entitled to summary judgment if

"the facts and inferences point overwhelmingly in favor of the moving party, such

that reasonable people could not arrive at a contrary verdict" (quoting

<u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1526 (11th Cir. 1997) (internal

quotation marks omitted))).

 "At the summary judgment stage, facts must be viewed in the light most

favorable to the nonmoving party only if there is a 'genuine' dispute as to those

facts." <u>Scott</u>, 550 U.S. at 380.  "When opposing parties tell two different stories,

one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of

ruling on a motion for summary judgment." <u>Id.</u>  "[C]redibility determinations, the

weighing of evidence, and the drawing of inferences from the facts are the function

of the jury." <u>Graham</u>, 193 F.3d at 1282.  "The nonmovant need not be given the

benefit of every inference but only of every reasonable inference." <u>Id.</u>

> Rule 56(c) mandates the entry of summary judgment, after adequate
> time for discovery and upon motion, against a party who fails to make
> a showing sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the burden of
> proof at trial.  In such a situation, there can be "no genuine issue as to
> any material fact," since a complete failure of proof concerning an
> essential element of the nonmoving party's case necessarily renders
> all other facts immaterial.

Celotex, 477 U.S. at 322-23; see Freeman v. JPMorgan Chase Bank N.A.,

-- Fed. App'x --, 2017 WL 128002, at *4 (11th Cir. Jan. 13, 2017) (same);

Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1247 (11th Cir. 1999) ("If the

non-movant in a summary judgment action fails to adduce evidence which would

be sufficient, when viewed in a light most favorable to the non-movant, to support

a jury finding for the non-movant, summary judgment may be granted.").

## III.   DISCUSSION

### A.   Plaintiff's Claim for Money Had and Received

"To establish a claim for money had and received a plaintiff must show

(1) that a party has received money justly belonging to the plaintiff; and (2) that the

plaintiff has made a demand for repayment which was refused."  Sec. & Exch.

Comm'n v. Price, No. 1:12-cv-2296, 2015 WL 11198937, at *6 (N.D. Ga. Mar. 31,

2015) (citing City of Atlanta v. Hotels.com, 710 S.E.2d 766, 770 (Ga. 2011)).  "An

action for 'money had and received' is the functional equivalent of an action for

unjust enrichment."  Id. at *6 n.5; see McCaughey v. Bank of America, N.A., 279

Fed. App'x. 794, 797 (11th Cir. 2008) ("[Money had and received] is merely one

form of action to recover damages based on unjust enrichment.").  An action for

money had and received is "founded on the equitable principle that no one ought to

unjustly enrich himself at the expense of another, and is a substitute for a suit in

equity." Gulf Life Ins. Co. v. Folsom, 349 S.E.2d 368, 370-71 (Ga. 1986). "Thus, recovery is authorized against one who holds the money of another which he ought in equity and good conscience to refund." Piedmont Eng'g & Const. Corp. v. Balcor Partners-84 II, Inc., 396 S.E.2d 279, 281 (Ga. Ct. App. 1990). "In an action for money had and received, the plaintiff generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment—subject to a weighing of the equities between the parties by the trier of fact." Wyatt v. Hertz Claim Mgmt. Corp., 511 S.E.2d 630, 632 (Ga. Ct. App. 1999).

In Wyatt, the defendant signed an agreement entitling her to payment of $1,500 from a car company. The company mistakenly sent her a check for $15,000, which the defendant cashed. The company later informed defendant of the error, but she refused to return the overpayment. The Georgia Court of Appeals affirmed summary judgment for the company on its claim for money had and received, because the written agreement "conclusively establishe[d]" that defendant was entitled to only $1,500. Id. at 632. The court found that defendant had "not demonstrated harm to herself beyond spending the money mistakenly

paid, which generally does not constitute 'prejudice' in an action for money had and received." Id. at 633.

Mr. Andrews, under the SAPA, "unequivocal[ly] . . . relinquished any right to the Annuity Payments." ([42] at 6). The evidence shows the Funds were mistakenly sent to Mr. Andrews. Neither he nor Mrs. Andrews were entitled to them. Plaintiff has demanded repayment of the Funds but Defendants have refused to return them. Defendants have not shown they would be prejudiced by returning the Funds. Although they have now spent most of the Funds, spending money that was mistakenly sent does not establish prejudice. See Wyatt, 511 S.E.2d at 633. This is especially true here, where expenditures generally occurred after Defendants learned that the Funds belonged to Plaintiff and after Plaintiff demanded that the Funds be returned. Most of the Funds were spent by Defendants after they were clearly put on notice that Plaintiff had transferred the money in error. Defendants are "not, in good conscience, entitled to retain" the Funds, and Plaintiff is entitled to summary judgment on its claim for money had and received. Dep't of Pub. Health v. Perry, 182 S.E.2d 493, 496 (Ga. Ct. App. 1971).[10]

---

[10]     Defendants, in their response brief, argue that Plaintiff "misle[d] William Andrews into believing he had every right to negotiate the check." ([54.1] at 5).

B.    Plaintiff's Conversion Claim

"An action for conversion redresses wrongful interference with rights in property."  In re Walker, 551 B.R. 679, 687 (Bankr. M.D. Ga. 2016).  "Any distinct act of dominion wrongfully asserted over one's property in denial of his right, or inconsistent with it, is a conversion."  Deere & Co. v. Rebel Auction Co., Inc., No. 315-cv-072, 2016 WL 3181148, at *2 (S.D. Ga. June 3, 2016) (quoting Maryland Cas. Ins. Co. v. Welchel, 356 S.E.2d 877, 880 (Ga. 1987)).  "It is

---

Defendants do not present any evidence or authority in support of this assertion. Even if they had, the Court previously rejected a similar argument:

> Defendants' argument that they are entitled to the Check because an unknown employ[ee] or agent of Plaintiff advised Mr. Andrews that he was entitled to the Check, also is without merit. . . .  Assuming, *arguendo*, there was a conversation in which some unidentified employee of Plaintiff said Mr. Andrews was entitled to the Check, there is no authority to support that when an agent or employee of the payor mistakenly tells the payee that he is entitled to funds sent in error, that the payee is entitled to keep the funds, especially after the mistake is identified by the payor and the payee is advised of it.

([42] at 7-8).  Defendants also argue that "the course of conduct followed and pursued by John Hancock as it relates to the check . . . constitute[s] gross negligence, threats and intimidation."  ([54.1] at 5-6).  Defendants again offer no evidence or authority in support of this statement.  To the extent the assertion is based on Plaintiff's so-called "threat[] to report William Andrews to the Internal Revenue Service," Defendants' argument is baseless.  ([54.1] at 5).

18

immaterial that such dominion was exercised in good faith." <u>Welchel</u>, 356 S.E.2d at 880.

"In order to establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." <u>Trey Inman & Assocs., P.C. v. Bank of Am., N.A.</u>, 702 S.E.2d 711, 716 (Ga. Ct. App. 2010). "[C]ase law has acknowledged that checks may be converted." <u>Decatur Auto Ctr. v. Wachovia Bank, N.A.</u>, 583 S.E.2d 6, 8 (Ga. 2003). "Conversion is also available for specific amounts of money placed on deposit with a bank." <u>Id.</u> at 9. That a defendant no longer possesses the property at issue is not a defense to a claim for conversion. <u>Id.</u> at 716 ("[T]he Bank's conversion claim is not defeated by the fact that TIA no longer possesses the disputed funds."); <u>DirecTV, LLC v. Shirah</u>, No. 413-cv-110, 2014 WL 1002778, at *2 (S.D. Ga. Mar. 12, 2014) (stating that, where defendant is "no longer in possession of the [property]," plaintiff must show defendant in the past "was in actual possession of the property"); <u>Holley v. Mut. Inv. Corp.</u>, 87 S.E.2d 236, 239 (Ga. Ct. App. 1955) ("The mere fact that they do not now have it . . . does not negative conversion or wrongful disposition of the property."); <u>see</u> <u>also</u> <u>Hanover Ins. Co. v. Hermosa Const. Grp., LLC</u>, 57 F. Supp. 3d 1389, 1401 (N.D. Ga. 2014)

(granting summary judgment where "it is undisputed that Hermosa was in possession of the subject funds at a time when Hanover had the right of possession").

The undisputed evidence shows that Plaintiff has a right to the Funds, that Defendants received and exercised control over the Funds despite having no interest in them, that Plaintiff demanded repayment of the Funds, and that Defendants refused to return the Funds to Plaintiff.  Plaintiff is entitled to summary judgment on its conversion claim.[11]

C.     Plaintiff's UVTA Claim

Plaintiff seeks, under the UVTA, to void Mr. Andrews' transfer of the Funds to his wife, and to obtain judgment against Mrs. Andrews in the amount of the Funds.  ([53.1] at 16-17).  The UVTA provides:

> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

---

[11]     Defendants' assertion to the contrary is conclusory, unsupported by citations to evidence or authority, and repeats arguments already rejected by the Court.  (See [54.1] at 6).

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

    (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

    (B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

O.C.G.A. § 18-2-74(a); see CSX Transp., Inc. v. Leggett, No. 1:07-cv-1152, 2010 WL 3210841, at *4-5 (N.D. Ga. Aug. 12, 2010) ("To establish that a fraudulent transfer has occurred, Plaintiff must prove (1) there was a claim against Defendant by Plaintiff; (2) the Defendant did not receive relatively equivalent value in consideration of the transfer; and (3) Defendant was insolvent or likely to become insolvent.").

Plaintiff is entitled to relief under the UVTA.  Plaintiff is a "creditor" because it "has a claim" against—that is, a "right to payment" from—Defendants. O.C.G.A. § 18-2-71(4); O.C.G.A. § 18-2-71(3) (stating that a "claim" is "a right to payment, whether or not the right is reduced to judgment").  This right to payment is based on Plaintiff's claims for conversion and money had and received.  It is undisputed that Mr. Andrews did not receive any consideration—or any "reasonably equivalent value"—in exchange for the transfer to Mrs. Andrews. O.C.G.A. § 18-2-74(a)(2).  Mr. Andrews "reasonably should have believed that

he . . . would incur . . . debts beyond his . . . ability to pay as they became due"
because the transfer caused him to relinquish the $188,490 he owed to Plaintiff
when he owned no other assets beyond his clothing.  O.C.G.A. § 18-2-74(a)(2)(B);
see O.C.G.A. § 18-2-71(5) ("'Debt' means liability on a claim."); cf. O.C.G.A. §
18-2-72(a) ("A debtor is insolvent if, at a fair valuation, the sum of the debtor's
debts is greater than the sum of the debtor's assets.").  Plaintiff is thus entitled,
under the UVTA, to void Mr. Andrews' transfer "to the extent necessary to satisfy
[Plaintiff's] claim."  O.C.G.A. § 18-2-77(a).[12]

Plaintiff "may recover judgment for the value of the asset transferred . . . or
the amount necessary to satisfy [Plaintiff's] claim, whichever is less.  The
judgment may be entered against . . . [t]he first transferee of the asset," who, in this
case, is Mrs. Andrews.  O.C.G.A. § 18-2-78(b)(1)(A).  Plaintiff is entitled, under
the UVTA, to judgment against Mrs. Andrews in the amount of $188,490, the

---

[12]    The Court also finds that Plaintiff is entitled to void the transfer because
Mr. Andrews "made the transfer . . . [w]ith actual intent to hinder, delay, or
defraud" Plaintiff.  O.C.G.A. § 18-2-74(a)(1).  The following facts support this
conclusion:  (1) the transfer was made to Mr. Andrews' wife, "an insider";
(2) Mr. Andrews "retained possession or control of the property transferred after
the transfer"; (3) "[t]he transfer was of substantially all the debtor's assets";
(4) "[t]he value of the consideration received by the debtor was [not] reasonably
equivalent to the value of the asset transferred"; (5) "[t]he debtor was insolvent or
became insolvent shortly after the transfer was made"; and (6) "[t]he transfer
occurred shortly before or shortly after a substantial debt was incurred."  O.C.G.A.
§ 18-2-74(b) (listing relevant factors "[i]n determining actual intent").

amount of the voidable transfer.  Cf. Leggett, 2010 WL 3210841, at *4-5 (granting

summary judgment to a creditor against the wife of a debtor because the debtor,

while insolvent, transferred money to her without consideration).[13]

---

[13]   Defendants claim Mr. Andrews "was not insolvent before or after the transfer" because he "was receiving a vested pension from the NFL."  ([54.1]). Defendants have not produced any evidence of this pension, including the amount or frequency of the pension payments.  Defendants also claim that the SAPA is "voidable" because, in view of the "bargaining positions of the parties" and the "inequitable distribution" under the agreement, the SAPA "was executed by William Andrews while under economic duress."  ([54.1]).  "Though recognized as a valid defense, Georgia courts are reluctant to void contracts, and there is no Georgia decision voiding a contract on the theory of economic duress." Abdulla v. Klosinski, 898 F. Supp. 2d 1348, 1368 (S.D. Ga. 2012).  Duress is not established by mere "reluctance" to enter the contract, "very disadvantageous" contract terms, unequal bargaining positions, "some unfairness in the negotiations," "economic necessity," "financial embarrassment" or "the pressure of business circumstances."  Chouinard v. Chouinard, 568 F.2d 430, 434 (5th Cir. 1978); Frame v. Booth, Wade & Campbell, 519 S.E.2d 237, 240 (Ga. Ct. App. 1999).  The defendant must show "acts or conducts of the opposite party which are wrongful or unlawful."  Frame, 519 S.E.2d at 239.  Defendants have not submitted any evidence to support their economic duress defense, Mr. Andrews apparently entered into the SAPA as a result of advice he received, (see [54.1] at 3 ("William was advised to liquidate [the] annuity.")), his duress claim comes fifteen years after the SAPA was executed, and there is no evidence of any wrongful acts by Settlement Capital.  Defendants' economic duress defense fails.  See In re Chatham Parkway Self Storage, LLC, 507 B.R. 13, 22 (Bankr. S.D. Ga. 2014); Frame, 519 S.E.2d at 239-40.

D.   <u>Defendants' Counterclaims</u>

1.   <u>Negligent Misrepresentation and Promissory Estoppel</u>

Plaintiff seeks summary judgment on Defendants' counterclaims for negligent misrepresentation and promissory estoppel.  "The essential elements of a claim of negligent misrepresentation are:  (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance."  <u>Home Depot U.S.A., Inc. v. Wabash Nat. Corp.</u>, 724 S.E.2d 53, 60 (Ga. Ct. App. 2012).  "The essential elements of promissory estoppel are:  (1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right."  <u>Rental Equip. Grp., LLC v. MACI, LLC</u>, 587 S.E.2d 364, 367 (Ga. Ct. App. 2003).

Defendants claim that "Plaintiff negligently supplied [Mr. Andrews] with false information that he was entitled to receive [the Funds]," and that Mr. Andrews "reasonably relied on this representation and endorsed the proceeds

24

to his wife." ([24] at 7).  Defendants do not present any evidence in support of this assertion.  Even if they had, the counterclaims fail because Mr. Andrews' alleged reliance on Plaintiff's representation was not reasonable.  Under the SAPA, Mr. Andrews "unequivocal[ly] . . . relinquished any right to the Annuity Payments."  ([42] at 6; see [54.1] at 8 ("The Sale Agreement . . . appears on its face to be unambiguous.")).  The SAPA states it may be altered only by "written instrument signed by all parties to the Agreement."  (PSMF ¶ 8).  Mr. Andrews did not receive any Annuity payments in the fourteen years before his receipt of the Funds.  "It is incredulous that Mr. Andrews believed that he was entitled to an additional Annuity Payment based on some claimed miscalculation that entitled Mr. Andrews to retain an additional payment under the Agreement."  ([42] at 7). "Assuming, *arguendo*, there was a conversation in which some unidentified employee of Plaintiff said Mr. Andrews was entitled to the Check, there is no authority to support that when an agent or employee of the payor mistakenly tells the payee that he is entitled to funds sent in error, that the payee is entitled to keep the funds, especially after the mistake is identified by the payor and the payee is advised of it."  ([42] at 7-8).  Plaintiff is entitled to summary judgment on Defendants' counterclaims for negligent misrepresentation and promissory estoppel.

2.      Breach of the Duty of Good Faith and Fair Dealing

Plaintiff also seeks summary judgment on Defendants' counterclaim for breach of the duty of good faith and fair dealing.  "[T]o state a claim for breach of the implied duty of good faith and fair dealing, a plaintiff must set forth facts showing a breach of an actual term of an agreement.  General allegations of breach of the implied duty of good faith and fair dealing not tied to a specific contract provision are not actionable."  Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C., 426 F. Supp. 2d 1356, 1370 (N.D. Ga. 2006).  There is no evidence that Defendants had a contract with Plaintiff, and Defendants do not assert a claim for breach of contract.  "In the absence of a breach of contract claim, [Defendants'] claim for breach of an implied covenant of good faith and fair dealing cannot survive summary judgment."  U.S. Faucets, Inc. v. Home Depot U.S.A. Inc., No. 1:03-cv-1572, 2006 WL 1518887, at *5 (N.D. Ga. May 31, 2006).

E.      Prejudgment Interest

Plaintiff seeks prejudgment interest on the $188,490 payment made to Mr. Andrews, with interest accruing from August 27, 2015, when Plaintiff first demanded return of the Funds.  "[A]s long as there is a demand for prejudgment interest prior to the entry of final judgment, a trial court should award it."  Crisler v. Haugabook, 725 S.E.2d 318, 319 (Ga. 2012).  "Under Georgia law, if a

26

sum is liquidated, pre-judgment interest accrues from the date of demand at a rate of 7 percent per annum." Great Am. Ins. Co. v. Int'l Ins. Co., 753 F. Supp. 357, 364 (M.D. Ga. 1990). "A liquidated sum is an amount *certain* and *fixed,* either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof; it is so much or nothing." Id. "Where the amount of damages can only be established by the trier of fact, the damage award is unliquidated." Id.

The Funds, to which Plaintiff is entitled, constitute a liquidated sum because they are certain and fixed. Plaintiff is entitled to prejudgment interest at a rate of 7%, with interest accruing from August 27, 2015, the date Plaintiff first demanded return of the Funds. Plaintiff is thus entitled to prejudgment interest in the amount of $18,905.81, for a total recovery of $207,395.81. This amount is required to be reduced by the $50,005.17 currently on deposit in the Registry of the Court. These Registry funds will be disbursed to Plaintiff and credited against the total judgment amount of $207,395.81 to which Plaintiff is entitled.

IV.    **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary

Judgment [53] is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment shall be entered against

Defendants, in favor of Plaintiff, in the amount of $207,395.81.

**IT IS FURTHER ORDERED** that the Clerk shall disburse to Plaintiff the

$50,005.17 that Defendants previously deposited into the Registry of the Court.

This disbursement shall be applied to reduce the amount of the judgment against

Defendants.


**SO ORDERED** this 31st day of January, 2017.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE